JOHN J. BRIGGS *vs.* BOSTON AND MAINE RAILROAD.

Middlesex.    May 18, 1905. — June 21, 1905.

Present: KNOWLTON, C. J., BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Negligence,* Contributory.

If the rider of a bicycle, when three hundred feet from a railroad crossing with four tracks over which trains pass very frequently, seeing the gates down dismounts and talks to a friend, and ten minutes later, after the gates have been raised and lowered again, sees them beginning to rise, the gateman raising them about two thirds up to allow two women to pass, and if in the meantime the bell of an engine attached to a train waiting near the crossing in full view of the bicycle rider begins to ring indicating that the train is about to start, and the rider mounting his bicycle rides toward the crossing looking on the ground straight ahead, and is struck on the head and knocked down by one of the gates while being lowered, he cannot be found to be in the exercise of due care.

TORT for personal injuries from being hit on the head and knocked to the ground by a gate at a crossing of the defendant on Moody Street in Waltham while the plaintiff was approach-

ing the crossing on a bicycle between six and seven o'clock on the evening of May 8, 1903. Writ dated November 5, 1903.

In the Superior Court *Sheldon,* J. ordered a verdict for the defendant, and reported the case for determination by this court. If on the evidence the plaintiff was entitled to have his case submitted to the jury, a new trial was to be granted; otherwise, judgment was to be entered on the verdict.

*J. W. Wellington,* for the plaintiff.

*G. F. Richardson, L. T. Trull & F. N. Wier,* for the defendant.

KNOWLTON, C. J.    The plaintiff was riding on his bicycle in Waltham, along a street which crossed the defendant's railroad, on which, at that point, were four tracks where trains passed very frequently. When he was about three hundred feet from the crossing, he discovered that the gates were down, and he rode his bicycle to the curbstone and there engaged in conversation with one McGluichey, who stood upon the sidewalk in front of the building in which his office was located. He continued the conversation about ten minutes. During the first three minutes the gates were down, then they went up entirely and remained up two or three minutes, then they were lowered while an express train passed. In the meantime a local train entered the station and stopped at a point from fifty to one hundred feet from the crossing. It was daylight, and the engine and the whole train were in full view of the plaintiff while he stood talking with McGluichey. The gates were then down, and the gateman allowed them to remain down while a flagman attached lanterns to the ends of them. As two women were apparently desirous of passing, he raised the gates about two thirds up and allowed them to pass. Then the bell of the engine began to ring, indicating that this train was about to start, and the gateman, as soon as he heard the bell on the local train, reversed the direction of the gates and began to lower them. The plaintiff, who had started to ride over the crossing, was hit on the head and knocked down into the street by one of the gates. The approaching train was all the time in full view. The continuous ringing of the engine bell was in his hearing, and other bells were ringing on the gates during all the time that they were descending. No bell rang while the gates were going up.

The plaintiff testified that as he saw the gates going up, he jumped on his bicycle and rode towards the crossing, that as he rode he was looking on the ground, straight ahead, and did not see whether the gates were being lowered or whether the local train was moving, and did not hear, or listen to hear, the bells on the gates or the bell on the engine, or know whether they were ringing or not. He further testified that he knew that trains passed very frequently over this crossing, going both east and west; that the whole of the local train could be seen the entire distance between where he stood with McGluichey and the crossing; that there were buildings on the other side of the street which obstructed the view of the tracks on that side of the crossing until he came within a few feet of the tracks. He also testified that he could have stopped his bicycle at any time within a distance of thirty feet.

We are of opinion that there was no evidence to warrant a finding that the plaintiff was in the exercise of due care. While the fact that the gate was going up when he started to go across was proper to be considered, it did not justify him in shutting his eyes and ears to all the other sights and sounds which should have shown him that he could not safely go forward. His testimony, in connection with the undisputed facts as to the situation and the dangerous conditions at the crossing, shows that he was entirely inattentive, and was not in the exercise of ordinary care. The case resembles in some of its features *Sewell* v. *New York, New Haven, & Hartford Railroad*, 171 Mass. 302. See also *Creamer* v. *West End Street Railway*, 156 Mass. 320, 324; *Chase* v. *Maine Central Railroad*, 167 Mass. 383, 387.

*Judgment on the verdict.*