## In re William T. Morse.

### May Term, 1924.

Present: Watson, C. J., Powers, Taylor, Slack, and Butler, JJ.

Opinion filed October 7, 1924.

*Contempt—Criminal and Civil Contempt Defined—Attorney and Client—Criminal Contempt for One Not Attorney to Act as Such—"Attorney" in Court Proceedings Signifies Attorney at Law—In Proceedings for Criminal Contempt Immaterial That Pretensions to Being Attorney Were Known to Be False—Protection of Federal Constitution as to Interstate Commerce Does Not Affect State Regulations*

*as to Attorneys—Supreme Court's Right to Punish for
Contempt Not Affected by Practice of One Pretending to
Be Attorney Having Been Confined to Justice Court—Im-
plied Power of Supreme Court to Punish Those Pretending
to Be Attorneys.*

1. "Criminal contempt" is one committed directly against the
   authority of the court, tending to impede or interrupt its
   proceedings or lessen its dignity.

2. "Civil contempt" is one which operates mainly to deprive an-
   other party to a suit of some right, benefit, or remedy to
   which he is entitled under an order of the court.

3. It is criminal contempt for one not an attorney to hold himself
   out as an attorney and pretend to practice as such.

4. The word "attorney" used after an individual's name, in insti-
   tuting suits, and in other proceedings in court, means attor-
   ney at law, unless it is clearly indicated otherwise.

5. In prosecution for criminal contempt of one for pretending to
   be an attorney when not such in fact, that justices of the
   peace and process servers with whom respondent did busi-
   ness knew he was not an attorney at law, does not relieve
   him from liability, the charge not being that he deceived or
   defrauded anyone but that he indulged in such unlawful pre-
   tensions.

6. In such a case, the fact that certain suits in which respondent
   signed notices of discontinuances as "Atty. for Plf." were on
   contracts involving interstate commerce, which is protected
   by the Federal Constitution from interference by the States,
   is not a defense, since such protection does not include the
   right to dictate who shall prosecute or defend such contracts
   as attorney before the courts of this State.

7. The provisions of Acts of 1906, No. 63 (G. L. 1591), authorizing
   the Justices of the Supreme Court to regulate admission of
   attorneys "to the practice of law before the courts of this
   State," apply to persons desiring to practice in justice courts
   the same as in the higher courts, hence the power of the
   Supreme Court to punish one for contempt for pretending to
   practice law as an attorney is unaffected by the fact that
   such unlawful practice was confined to justice courts.

8. By reason of the express grant by the Legislature contained in
   Acts of 1906, No. 63 (G. L. 1591), giving the Supreme Court

the right to determine who shall practice as attorneys before the courts of this State, such Court has implied power to punish for contempt persons pretending to the office of attorney, and practicing as such in the courts of this State without authority.

COMPLAINT for contempt filed in Supreme Court of Caledonia County, charging respondent with intruding himself into the office of an attorney of said Court, and with pretending to practice law as such attorney. Answer containing general denial of charges by respondent, with special pleas summarized in the opinion. Hearing on commissioner's report at the May Term, 1924. The opinion states the case. *Respondent adjudged guilty of contempt.*

*Jutten A. Longmoore,* State's Attorney, for the State.

One not having received the oath of an attorney in any court is not entitled to practice law. *In re Carney,* 71 Vt. 508.

Supreme Court has power to make rules and regulations concerning admission of attorneys at law, which, when made pursuant to the statute, have the force of law. G. L. 1591; *Taft* v. *Taft,* 82 Vt. 64.

Pretending to the office of an attorney, or attempting to practice law without complying with rules of Supreme Court, constitutes contempt against dignity and authority of such Court, and is punishable as a crime. 9 Cyc. 6, and cases cited.

In Supreme Court's power to punish for contempt one pretending to be an attorney and to practice as such, no distinction is to be drawn between justice and other courts, and justice courts are courts of record. G. L. 1591; *In re Cooper,* 32 Vt. 254, 258, and note.

Courts have inherent power, without the aid of statute, to punish for contempt. McGehee Due Process of Law, pp. 160, 170, and cases cited; *In re Cooper, supra; In re Consolidated Rendering Co.,* 80 Vt. 55.

Where contempt was not committed directly in presence of court, usual method is to proceed summarily by order to show cause. McGehee Due Process of Law, pp. 170, 171, and cases cited; *State ex. Inf. Atty. Gen.* v. *Hildreth,* 82 Vt. 382.

The respondent in criminal contempt is not entitled to

trial by jury. *In re Carney, supra;* McGehee Due Process of Law, p. 171.

*Harry C. Shurtleff* for the respondent.

If respondent be in contempt of justice court in what he did, he is not in contempt of the Supreme Court, and one court will not punish for contempts of another. Crosby's Cas. 3 Wils. 188; *Bessette* v. *Conkey Co.,* 194 U. S. 330, 48 L. ed. 1003; *Alfred* v. *Alfred,* 87 Vt. 542.

SLACK, J. The respondent is charged with contempt of this Court. The complaint alleges, in brief, that he did, on divers days and times, intrude himself into the office of an attorney of this Court, and did pretend to the office of an attorney of this Court, and did wrongfully pretend to practice law as such attorney, and as such attorney did bring, manage, and conduct divers justice trustee suits, and prays that he be adjudged guilty of a contempt of this Court. The respondent, by way of answer, admits that he acted as agent for different parties under proper power of attorney or appointment, but denies that he did more than he had a legal right to do, and denies that he ever pretended or represented himself to be an attorney at law either of this or any other court, and denies the right of this Court to try him in a summary manner for the offense charged, but insists that he is entitled to a trial thereon by a jury in the Caledonia county court, and insists that if what he did amounted to contempt it was contempt of the court before which he acted, and not contempt of this Court. The case was sent to a commissioner to find and report the facts, and is now before us on his report.

The facts found, which are here material, are these: The respondent has never received the oath of an attorney in any court. During the time of the alleged acts he resided, and maintained an office, at Lyndonville, Vermont. His chief occupation was that of an accountant, but he also did a collection business and advised people about business matters. He advertised his business on his stationery, and otherwise, as follows:

"W. T. Morse

ACCOUNTANT

Auditing-Business Law-Collecting

Darling Block

Lyndonville, Vt."

He made out justice trustee writs "in many instances" for the purpose of enforcing payment of claims received by him for collection, causing as many as twenty-five or thirty such writs to be served by a single officer during the year 1923.    Some of these writs he indorsed as attorney, and some he indorsed as acting attorney. Many of the writs which he indorsed had a "scrawl" or "something" before the printed word "attorney," which he claimed indicated and meant "acting," or "acting as."    On September 21, 1923, he brought three trustee suits against one McDowell in favor of three different parties.    All of these suits were returnable at his office before a justice of the peace. On the back of the writ in each case, he indorsed his name as attorney, "except for a scrawl which appears under his signature in each instance where his indorsement appears."    These writs, which are State's Exhibits 2, 3, and 4, are made part of the report, as are all exhibits herein referred to.    On October 17, respondent wrote the defendant concerning these suits as follows:  "On one of the cases we are not ready with all our proof just yet, and associate counsel cannot be here Saturday," etc.    Later, the three suits were discontinued.    On the back of the writ, State's Exhibit 3, the respondent wrote the following: "Suit herein hereby discontinued this 20th day of Oct. 1923," and signed it "W. T. Morse, Atty. for Plf."    The discontinuance of the other two suits is evidenced by State's Exhibit 5, which was written and signed by the respondent, and is as follows:

"S. S. McDowell;

You are hereby notified that the suit of Walter M. Lowney Co. against you, returnable at my office in Lyndonville Oct. 20, 1923, at 1 P. M. is discontinued. Dated at Lyndon this 20th day of October, 1923.

W. T. MORSE, Atty. for Plf.

S. S. McDowell;

You are hereby notified that the suit of Lowell
Bros. & Bailey Co. against you, returnable at my office
in Lyndonville at 3 P. M. is discontinued.

Dated at Lyndon this 20th day of October, 1923.

W. T. MORSE, Atty. for Plf.''

The latter notices refer to suits commenced by writs marked
State's Exhibits 2 and 4, respectively. The respondent claimed
that he did not wish to sign these notices of discontinuance as
attorney for the plaintiff, and did so at the suggestion of the
attorney for the defendant, but it is found that defendant's
attorney did not advise the respondent in the matter, but merely
asked that the suits be discontinued by someone having author-
ity to do so. Findings concerning other suits brought by the
respondent are reported, but as they do not affect the situation,
need not be noticed. The respondent never told anyone that
he was an attorney at law, and the justices, sheriffs, and con-
stables with whom he did business knew that he was not, and
so did such witnesses as appeared before the commissioner. One
of the justices, when asked by the respondent to sign writs in
blank, consulted an attorney before doing so, but later signed
and delivered to the respondent a few such writs. All of the
writs used by the respondent were signed by, and returnable
before, a justice of the peace.

[1-3] Proceedings for contempt are of two classes, crimi-
nal and civil. While an examination of the authorities shows
that the line of demarcation between the two classes is often
shadowy and does not run true, and that the learning on the
question abounds with fine and superfine distinctions, the dis-
tinction supported by the weight of authorities, and which we
believe to be the correct one, is that a criminal contempt is one
committed directly against the authority of the court, tending
to impede or interrupt its proceedings or lessen its dignity,
while a civil contempt is one which operates mainly to deprive
another party to a suit of some right, benefit, or remedy to
which he is entitled under an order of the court. *In re Nevitt,*
117 Fed. 448, 54 C. C. A. 622; *Bessette* v. *W. B. Conkey Co.,*
194 U. S. 324, 328, 48 L. ed. 997, 24 Sup. Ct. 665; *Clay* v. *Wat-
ers,* 178 Fed. 385, 101 C. C. A. 645, 21 Ann. Cas. 897; *Hurley*
v. *Com.,* 188 Mass. 443, 74 N. E. 667, 3 Ann. Cas. 757. In the

last named case, the court, referring to criminal contempt, said, "The punishment of such an offense is solely for the vindication of public authority and the majesty of the law." Since criminal contempt is directed against the power and dignity of the court, private parties have little, if any, immediate interest in the proceedings for its punishment. Such is the nature of the case before us.

There would seem to be no doubt on the facts reported but that the respondent acted, and held himself out, as an attorney. Indeed, he in effect admits as much by his explanation of the meaning of the scrawl which he used. It "indicated and meant," says he, acting attorney or acting as attorney. And it appears that he so acted, not in a single instance, or occasionally, but in many instances, apparently every opportunity he had, covering a considerable period of time. To the extent of his ability, he was practicing law in the justice courts of this State in every sense of the word; "acting as" attorney regularly in those courts, using the title of attorney in some instances, as we have seen, without any qualification, and in others with a claimed qualification which the commissioner disposes of by merely stating respondent's claim concerning it without any finding either way.

[4] He attempts to evade the effect of his conduct on the ground that he did not pretend or represent himself to be an attorney at law. But this avenue of escape is not available to him. The word "attorney," unless clearly indicated otherwise, is construed as meaning attorney at law. *Danforth* v. *Eagan,* 23 S. D. 43, 119 N. W. 1021, 139 A. S. R. 1030, 20 Ann. Cas. 418; *Nolan* v. *St. Louis & S. F. Ry. Co.,* 19 Okl. 51, 91 Pac. 1128; *People* v. *Erbaugh,* 42 Colo. 480, 94 Pac. 349; *People* v. *May,* 3 Mich. 598; 1 Thornton on Attys. at Law, 11; 6 C. J. 566. The rule is well stated in *People* v. *May,* thus: "The word attorney, when used in connection with proceedings of courts, and the authority to conduct business in them, as well as when employed in a general sense with reference to the transactions of business usually and almost necessarily confided to members of the legal profession, has a fixed and universal signification on which the technical and proper sense unite. The legislator and the judge, the lawyer and the layman, understand it alike, as having reference to a class of persons who are by license constituted officers of courts of justice, and who are

empowered to appear and prosecute and defend, and upon whom peculiar duties, responsibilities, and liabilities are devolved by law in consequence." That such was the understood meaning of the word when Blackstone wrote his commentaries is apparent from what he there says concerning the courts of Westminster Hall and the practitioners therein. "No man can practice as an attorney in any of those courts, but such as is admitted and sworn as an attorney." III Bl. Com. *26. That the word has been used in the same sense by our lawmakers throughout the legislative history of the State is attested by our statutes. It is there used over and over again to denote those persons licensed to practice in our courts, while the words, "attorney at law," are seldom used for that purpose.

[5] The fact that the justices of the peace and process servers with whom the respondent did business knew that he was not an attorney at law does not affect the situation, since the charge is not that he deceived or defrauded anyone by his unlawful pretensions, but that he indulged such pretensions.

[6] It is urged that since the plaintiffs in the three suits in which respondent signed notices of discontinuance as "Atty. for Plf." were foreign concerns, it will be presumed, in the absence of a finding to the contrary, that the contracts sued upon involved interstate commerce, and that such commerce is protected by the Federal Constitution from interference by the states. Granting that to be so, such protection does not include the right to dictate who shall prosecute or defend such contracts, as attorney, before the courts of this State.

[7] It is claimed, too, that since the respondent's operations were confined to the justice courts he is not amenable to this Court. But we think that if he is answerable anywhere, for the offense charged, it is to this Court. He is not charged with violating a mandate of the inferior court or with misbehavior in that court, but rather with intruding into an office of this Court, pretending to act under the authority and with the sanction of this Court.

The right to act as an attorney is everywhere recognized as a privilege of a personal nature, not open to all, but limited to persons of good moral character, possessing special qualifications ascertained and certified after a long course of study, both general and professional. It is in the nature of a franchise from the state conferred only for merit. It cannot be

assigned or inherited, but must be earned by hard study and good conduct. It is usually attested by a certificate of the authority whence derived, and is further evidenced by the public records. It cannot be lawfully exercised except by those who have complied with all statutory requirements, and the rules of court, relating thereto. Authority to confer or withhold this privilege is usually confided to the courts. In England, the act which gave shape to the matter, and became a model was that of 4 Henry IV, ch. 18, which, among other things, provided, "that all attorneys should be examined by the justices, and by their discretion, their names shall be put upon the roll." The power and authority to license attorneys has always rested with the courts, in this State, though at first, not exclusively with this Court. Early, the county courts had authority to admit attorneys to those courts, and the Legislature prescribed the requirements for admission; but attorneys of the county courts could not, as such, practice in the Supreme Court, and the latter Court, apparently, had unrestricted authority to fix requirements for admission thereto. See Revision 1798, p. 82, §§ 21, 22. Later, the Legislature abolished the requirements previously prescribed by it, and gave to the Judges of the Supreme Court full and absolute authority to make rules regulating the admission of attorneys to that Court, and to the several courts (See R. S. ch. 25, § 12); the county courts still having authority to admit attorneys to those courts, but only under such rules and regulations as were prescribed by the Judges of the Supreme Court. Other changes followed, from time to time, extending the authority of the Judges of the Supreme Court, down to 1906, when, by Act. No. 63, what is now G. L. 1591 became the law. It provides: "Justices of the Supreme Court * * * * shall make, adopt and publish and may alter or amend rules regulating the admission of attorneys to the practice of law before the courts of this state." We need not pause to consider whether prior to this enactment this Court had authority to deal with persons pretending to practice law as attorneys before the justice courts, for certain it is, it now has precisely the same authority concerning such persons that it has respecting like offenders in this or the county courts.

[8]    This brings us to the question of whether this Court has authority to punish for contempt one who, pretending to

the office of attorney, practices law before the courts of 'this State.

It is true we have no constitutional or statutory provision on the subject, but none is necessary. Nor is it necessary to search the common law for authority, since such authority is fairly to be implied from the express power conferred upon this Court in the matter of licensing attorneys. The rule of constitutional interpretation announced in *McCullough* v. *Maryland,* 4 Wheat. 316, 4 L. ed. 579, that that which was reasonably appropriate and relevant to the exercise of a granted power was to be considered as accompanying the grant, has been so universally applied that it suffices merely to state it. And as there is nothing in the inherent nature of the power to deal with contempt which causes it to be an exception to such rule, there can be no reason for refusing to apply it to that subject. The cases of *Marshall* v. *Gordon,* 243 U. S. 521, 61 L. ed. 881, 37 Sup. Ct. 448, L. R. A. 1917F, 279, Ann. Cas. 1918B, 371; *In re Chapman,* 166 U. S. 661, 41 L. ed. 1154, 17 Sup. Ct. 677, and *Anderson* v. *Dunn,* 6 Wheat. 204, 5 L. ed. 242, although dealing with the implied power of Congress to punish for contempt, are full authority for the proposition that a grant of authority to either a legislative or judicial body carries with it implied power to punish for contempt, in so far as necessary to preserve and carry out the legislative authority given. In *Marshall* v. *Gordon,* Mr. Chief Justice White, after discussing the authority of the two Houses of Parliament in England to punish for contempt, says: "It thus becomes apparent from a doctrinal point of view the English rule concerning legislative bodies generally came to be in exact accord with that which was recognized in *Anderson* v. *Dunn, supra,* as belonging to Congress, that is, in virtue of the grant of legislative authority there would be a power implied to deal with contempt in so far as that authority was necessary to preserve and carry out the legislative authority given. * * * What does this implied power embrace? is thus the question. In answer, it must be borne in mind that the power rests simply upon the implication that the right has been given to do that which is essential to the execution of some other and substantive authority expressly conferred. The power is therefore but a force implied to bring into existence the condition to which constitutional limitations apply. It is a means to an end and not the end itself. How-

ever it rests solely upon the right of self-preservation to enable the public powers given to be exerted."

Mr. Justice Johnson says in *Anderson* v. *Dunn, supra,* "But if there is one maxim which necessarily rides over all others, in the practical application of government, it is, that the public functionaries must be left at liberty to exercise the powers which the people have entrusted to them. The interests and dignity of those who created them, require the exertion of the powers indispensable to the attainment of the ends of their creation. * * * On this principle it is, that courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates, and as a corollary ·to this proposition, to preserve themselves and their officers from the approach and insults of pollution."

That the express legislative grant to this Court of exclusive and full authority to determine who shall practice as attorneys before the courts of this State carries with ·it the implied power to do whatever may be reasonably necessary to make such grant effective, even to punishment for contempt those pretending to such office, cannot be doubted. Otherwise the act of the Legislature is nugatory.

Our conclusion is that this Court has implied power to punish for contempt persons pretending to practice as attorneys before the courts of this State, and that the facts alleged, and proved, show the respondent to be guilty of such offense.

*The respondent is, therefore, adjudged guilty of a contempt of this Court.*