**State of Vermont v. Bryant J. Allen**

[496 A.2d 168]

No. 84-047

Present: Allen, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed May 3, 1985

Robert Andres, Chittenden County Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

Nancy E. Kaufman, Montpelier, and Charles S. Martin, Barre, for Defendant-Appellant.

Gibson, J. Appellant challenges the rulings of the district court, holding him in violation of two conditions of probation (assaultive behavior; purchase, possession or consumption of alcohol), and also summarily finding him to be in criminal contempt of court. We affirm.

Two police officers responded to a neighbor's telephone call regarding a disturbance at a Burlington apartment. Arriving, they saw through the open door that the kitchen area was in chaos, with broken furniture, broken dishes and food strewn all over. (Witnesses later testified that appellant had not caused the damage.) They also saw a woman, whom they recognized as Janet Savage, crying while appellant stood over her.

When the officers asked Ms. Savage what was going on, appellant shook his fist at her and threatened that he would "get her" if she spoke. Although the apartment was not his, appellant also threatened the police if they would not leave.

As the police officers began to escort Ms. Savage from the apartment to the Battered Women's Shelter, appellant grabbed an officer and shoved him aside. The officers then arrested ap-

pellant. In doing so, they detected a strong odor of alcohol on his breath; later, they noticed that his speech was slurred.

Appellant admitted at the probation revocation hearing (during which he was twice warned for causing disruptions) that he "got violent" that night. Appellant defended his behavior as justified because police had entered without a warrant and threatened to kill him. Although appellant denied it, Ms. Savage testified that she and appellant had been drinking that night.

Appellant's probation officer testified that appellant not only had a severe alcohol problem, but also that he had seventy criminal convictions and that prior experience made it unlikely appellant would abide by probation conditions. The probation officer concluded, "Mr. Allen is not probation material."

At the close of testimony, the court announced that it found violations of two express conditions of appellant's probation warrant: Condition 9 (assaultive behavior), and Condition 10A (purchase, possession or consumption of alcohol). The court revoked probation and imposed the underlying sentences, concluding, "You have got a severe alcohol problem. Probation can't help you. . . ."

After appellant's attorney and the court began to discuss calculation of credit for time already served, the following exchange took place:

> THE COURT: Whatever he is entitled to credit for, he will get it. Okay.

> DEFENDANT: Two years? Is that what you're telling me? Two years?

> THE COURT: Go. Go.

At this point, appellant directed a grossly obscene remark at the court, whereupon the court stated:

> THE COURT: We'll certify that the defendant has just conducted himself in contempt of court; swearing at the court in the presence of an open courtroom. We would add additional 90 days to the sentence.

## I.

### A.

Appellant presents three challenges to the probation viola-

tion. First, he contends that, under *Gagnon* v. *Scarpelli*, 411 U.S. 778 (1973), federal due process standards require a court to issue written findings of fact to support a probation revocation. Only in this way, he contends, can appellate review be secured.

Interests shared by the probationer and the State "in the accurate finding of fact and the informed use of discretion," *Gagnon, supra*, 411 U.S. at 785, led the United States Supreme Court to impose in probation revocation hearings the "minimum requirements of due process," *id.* at 786, that it had earlier applied to parole revocations in *Morrissey* v. *Brewer*, 408 U.S. 471, 489 (1972). However, the Court in *Morrissey* had "no thought to create an inflexible structure," *id.* at 490, acknowledging, "[w]e cannot write a code of procedure; that is the responsibility of each State." *Id.* at 488.

Since *Gagnon* v. *Scarpelli*, a number of state and federal courts have held that, where the record and transcript enable the reviewing court to determine the basis for the revocation decision, no written findings are required. E.g., *Morishita* v. *Morris*, 702 F.2d 207, 209–10 (10th Cir. 1983); *United States* v. *Rilliet*, 595 F.2d 1138, 1140 (9th Cir. 1979); *Rheuport* v. *State*, 238 N.W.2d 770, 775 (Iowa 1976); *State* v. *Harris*, 368 So. 2d 1066, 1073 (La. 1979); *Pearson* v. *State*, 308 Minn. 287, 292, 241 N.W.2d 490, 493–94 (1976). However, at least one federal circuit agrees with appellant. See *United States* v. *Lacey*, 648 F.2d 441, 445 (5th Cir. 1981) (due process requires written statement of evidence relied on and reasons for revocation).

Section 302 of Title 28, V.S.A., does not require written findings, although it does require that a record of proceedings be kept so that it may be transcribed. A transcript was prepared and provided to this Court in this case.

■ Vermont's procedure comports with due process. Oral findings, when transcribed, are the equivalent of written findings and can expedite the process of decision-making. This approach benefits the litigants, who receive a prompt decision, and allows the court to render its decision when the evidence is fresh in mind. Vermont has recognized the value of issuing oral findings, where appropriate, by incorporating the procedure into its rules. V.R.Cr.P. 47(c); V.R.C.P. 52(a).

 The fact that findings are oral and transcribed, rather than prepared and typed subsequent to the hearing, does not alter the legal standard of appellate review. In either case, if the findings are deficient, a case may be remanded to the trial court for correction.

 The record before us is adequate for purposes of review. The transcript allows us to determine whether there was a factual basis for the court's oral findings and revocation of probation. We hold that a probationer's due process rights are adequately protected when a court states its essential findings on the record.

### B.

Appellant next claims that state law, 28 V.S.A. § 303(b), requires that a court make one of three findings before it may revoke probation:

(1) Confinement is necessary to protect the community from further criminal activity by the probationer; or

(2) The probationer is in need of correctional treatment which can most effectively be provided if he is confined; or

(3) It would unduly depreciate the seriousness of the violation if probation were not revoked.

 The court's finding that appellant has a severe alcohol problem and that probation could not help him was in all practical respects a finding that he was in need of correctional treatment which could best be provided by incarceration. While it is preferable for the court to express its conclusions in language readily identifiable as one of the alternatives set forth in 28 V.S.A. § 303(b), in this case the court's conclusion does satisfy § 303(b)(2) and is amply supported by the evidence.

### C.

Appellant also argues that probation could not lawfully be revoked for violation of Condition 10A.

The initial probation warrant imposed both Condition 10A, prohibiting the purchase, possession or consumption of alcohol,

and Condition 10B, which states, "You shall not use alcoholic beverages to the extent it interferes with your employment or the welfare of your family, yourself or any other person." After appellant and his probation officer disputed the interaction of the two concurrent conditions, the probation officer asked the court, by letter, with a cover copy to defendant's counsel, for clarification of the probation conditions. The court replied that Condition 10A was to be enforced.

Appellant contends "[t]here is no indication in the record that the probation officer ever advised the defendant as to the change in conditions, much less that the defendant had ever been afforded an opportunity to contest the modification."

We do not agree that appellant's probation conditions were "changed." The probation officer, with notice to appellant's counsel, sought and obtained a clarification of the validity of Condition 10A. Neither appellant nor his counsel submitted a response to aid the court's interpretation of its own order, or an objection after the court did so. At all times, appellant was under notice that his probation was conditioned upon compliance with Condition 10A. Whether or not Condition 10B was operable or rescinded, Condition 10A always remained in force; it had been properly imposed and was never stricken. Appellant violated the express terms of Condition 10A at his peril.

Moreover, the record and transcript indicate that appellant's claimed lack of notice was not raised in the court below. Inasmuch as the claim does not rise to the level of plain error, we reject it. *State* v. *Turner*, 145 Vt. 399, 403, 491 A.2d 338, 340 (1985).

## II.

Appellant also challenges the court's summary punishment, under V.R.Cr.P. 42(a), of ninety-days' incarceration for criminal contempt of court.

V.R.Cr.P. 42(a) provides:

*Summary Disposition.* A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The

order of contempt shall recite the facts and shall be signed by the judge and entered of record.[1]

 As the Reporter's Notes explain, V.R.Cr.P. 42(a) is procedural; the substantive legal standards for summary contempt are set by common law and statute. In Vermont, criminal contempt is an act "committed directly against the authority of the court, tending to impede or interrupt its proceedings, *or lessen its dignity." In re Morse,* 98 Vt. 85, 90, 126 A. 550, 551 (1924) (emphasis supplied). The power to punish for contempt is indispensable to secure both "the proper transaction and dispatch of business [and] *the respect and obedience due to the court and necessary for the administration of justice." In re Cooper,* 32 Vt. 253, 258 (1859) (emphasis supplied).

 Orders of contempt are discretionary acts. *Ex parte Terry,* 128 U.S. 289, 307 (1888); *In re Gustafson,* 650 F.2d 1017, 1022 (9th Cir. 1981); *Brooks* v. *Brooks,* 131 Vt. 86, 92, 300 A.2d 531, 535 (1973) (civil case). Therefore, reversal is appropriate only if appellant shows that the trial court's discretion was either totally withheld or exercised on grounds clearly untenable or unreasonable. *State* v. *Chambers,* 144 Vt. 377, 381, 477 A.2d 974, 977 (1984).

Appellant argues that, before summary contempt is permitted, not only must the conduct have occurred in the court's presence, but it must also so threaten orderly procedure that immediate action is necessary. Because "the alleged contempt

---

[1] We note, sua sponte, that the court made no *written* certificate of the summary contempt. Normally, remand would be ordered to cure this defect. See, e.g., *United States* v. *Mars,* 551 F.2d 711 (6th Cir. 1977). Because, under Rule 42(a), "citation, conviction and, ordinarily, punishment, will be accomplished in one fell swoop," *In re Chaplain,* 621 F.2d 1272, 1276 (4th Cir.), *cert. denied,* 449 U.S. 834 (1980), the specificity of a formal certificate is desirable. Sufficient detail should be provided for appellate review. *United States* v. *Marshall,* 451 F.2d 372, 375 (9th Cir. 1971). In this case, however, the stenographic transcription forwarded as part of the record serves as an acceptable substitute for the written order required by V.R.Cr.P. 42(a) and adequately discloses the basis for the court's action. The defect is a technical one, rather than substantive, amounting in this case to no more than harmless error.

occurred at the conclusion of the proceeding and did not disrupt [its] orderly progress," appellant contends, his remark was not punishable under V.R.Cr.P. 42(a), and contempt charges could only be pursued before a different judge, under the delayed and more deliberate procedures set forth in V.R.Cr.P. 42(b). We disagree.

Contempts committed "in the face of the court" are immediately punishable at the discretion of the judge without evidence or examination. *Ex parte Terry, supra,* 128 U.S. at 307, 312–13. In the instant case, the contempt was committed while the court was still in session; although sentence had been pronounced, the court was in the process of discussing with appellant's counsel the matter of credit for time already served. Thus, it was within the court's discretion to deal with the contempt immediately under V.R.Cr.P. 42(a). Compare *Cooke* v. *United States,* 267 U.S. 517 (1925) (delivery of allegedly contemptuous letter on day following adverse jury verdict not punishable by summary contempt procedure).

We also reject defendant's claim that contempts involving personal insults must always be directed to another judge at a later time under V.R.Cr.P. 42(b). A rule requiring that all flagrant personal insults be responded to only after delay would undermine the court's dignity and its authority. A judge is not merely an individual; he or she represents the authority of the law. As this Court has stated, the contempt power "secures respect for the law by requiring respect and obedience to those who represent its authority. Its exercise is not merely personal to the court and its dignity; it is due to the authority of law and the administration of justice." *Cooper, supra,* 32 Vt. at 257. Where a single remark insults both the individual judge personally and the sovereign authority that the judge represents, the personal aspect does not require use of the delayed procedure of V.R.Cr.P. 42(b). However, because there is always the possibility that a personal insult will cause the trial judge to lose that "calm detachment necessary for fair adjudication," *Mayberry* v. *Pennsylvania,* 400 U.S. 455, 465 (1971), this Court must be ever "watchful for distortion of the judge's sound discretion." *In re Gustafson, supra,* 650 F.2d at 1022.

■ As authority for a delay requirement, appellant cites *Mayberry* v. *Pennsylvania, supra,* 400 U.S. at 466; *United States* v. *Moschiano,* 695 F.2d 236, 252 (7th Cir. 1982), *cert. denied,* 464 U.S. 831 (1983); and *United States* v. *Brannon,* 546 F.2d 1242, 1249 (5th Cir. 1977). However, unlike the present situation, the trial court in each of these cases found no pressing need to deal with the contempt immediately, delaying action in each instance until after trial.[2] When this procedure is followed, V.R.Cr.P. 42 (b) will apply.

As the United States Supreme Court stated in *United States* v. *Wilson,* 421 U.S. 309, 316 (1975), when an affront to the court "disrupts and frustrates an ongoing proceeding . . . summary contempt must be available." In this case, summary contempt was available to the judge, in his discretion, "to act swiftly and firmly," *id.* at 319, in response to profanity uttered by appellant before the public and the court.

■ We also conclude that the trial court did not exceed its discretion under V.R.Cr.P. 42 (a) in imposing a ninety-day sentence. The record indicates that appellant had a history of seventy convictions, sufficient for him to be aware of proper courtroom behavior. Appellant had twice earlier disrupted the hearing, and had twice been warned. With the hearing drawing to a close, the court was justified in concluding that removal from the courtroom would be inadequate as a penalty. The penalty did not exceed that authorized for petty offenses. *Codispoti* v. *Pennsylvania,* 418 U.S. 506, 513–15 (1974); *State* v. *Moquin,* 138 Vt. 160, 163, 411 A.2d 1355, 1357 (1980). Thus, the court's finding of summary contempt, and the punishment imposed therefor, was not an abuse of discretion.

*Affirmed.*

---

[2] For similar reasons, we reject appellant's claim of "a right to allocution," which he contends is provided for under *Taylor* v. *Hayes,* 418 U.S. 488, 498 (1974) (citations omitted). *Taylor,* and its underlying authority, *Groppi* v. *Leslie,* 404 U.S. 496, 504 (1972), both involved contempt orders that the courts had chosen to delay until after trial.

We note that one incarcerated for summary contempt may seek prompt redress through the sentence review mechanism of 13 V.S.A. § 7042, under which the judge may reconsider his or her decision "in calm reflection." *State* v. *Therrien,* 140 Vt. 625, 627, 442 A.2d 1299, 1301 (1982).