## In re C.W.

[739 A.2d 1236]

No. 98-557

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed August 27, 1999

*Marvin Wolf*, White River Junction, for Appellant.

*Mary Ann Neal*, Special Assistant Attorney General, Rutland, for Appellee.

**Dooley, J.** M.C., mother of the juvenile C.W., appeals from a protective order of the Rutland Family Court. She contends the court: (1) abused its discretion and violated her constitutional right to travel by excluding her from the Town of Poultney; and (2) exceeded its authority in providing for enforcement of the balance of the order by criminal contempt. We amend the protective order and, as amended, affirm it.

The minor, C.W., was seven years old at the time of these proceedings and had been in the custody of the Department of Social and Rehabilitation Services (SRS) since November 1996. In March 1997, C.W. was adjudicated a child in need of supervision. Following a disposition hearing in October 1997, the court found on the basis of expert testimony that mother, M.C., suffered from significant psychopathology characterized by destructive and bizarre behaviors, including a compulsion to "rescue" perceived victims, most significantly C.W., and punish transgressors. The court found that M.C.'s untreated mental health problems rendered her unfit to parent the minor in a safe environment. Accordingly, the court approved a case plan in which C.W. remained in SRS custody and reunification would be attempted pursuant to a step-by-step plan. Under the case plan, SRS workers were to act as intermediaries for communication between M.C. and the minor. M.C. was to direct all communications and gifts to SRS, which would review and forward them, if appropriate, to the child.

In July 1998, SRS moved for a protective order to prohibit M.C. from possessing firearms or "contacting or attempting to contact" the minor or the minor's foster parents. See 33 V.S.A. § 5534 (court may

make order restraining or otherwise controlling conduct of person if disposition order has been previously entered and court finds that such conduct is detrimental to child and will tend to defeat execution of disposition order). The foster parents and SRS simultaneously filed a complaint for relief from abuse, pursuant to 15 V.S.A. § 1103. Both the motion and the complaint alleged that M.C. had attempted to contact the minor through a variety of surreptitious methods, including gifts containing hidden messages referring to "rescues" or "Resurrection Ranch," and had attempted to regain possession of firearms previously removed from her premises. The court issued a temporary relief-from-abuse order prohibiting M.C. from contacting the minor or coming within 1000 feet of the minor's residence, and referred the motion for hearing.

Following an evidentiary hearing on the motion in September 1998, the court found that mother had engaged in a sustained pattern of communications or attempted communications with the minor in violation of the SRS case plan. These included messages hidden in books and stamped on various toys, a letter in the form of a paper airplane found on the lawn of the foster parents' home which referred to a "special rescue," and another letter delivered to the foster parents and addressed to the child that stated in part, "good people in Government will rescue us." The court found that these efforts had caused the minor anxiety and nightmares, were detrimental to the child's welfare, and contrary to the disposition order. Accordingly, the court granted the motion, and entered a protective order enjoining M.C. as follows:

1. [M.C.] is restrained and enjoined from having any contact with C.W. at home, on the street, or elsewhere, by phone, mail or through third parties. [M.C.] must stay 1000 feet away from C.W. at all times and places and may not be within the Town of Poultney, Vermont.

2. [M.C.] is prohibited from hiding messages in or on toys, books or gifts. All hand written messages must be visible from the outside and may not include the Resurrection Ranch logo.

3. Violation of this order will result in criminal contempt charges and arrest pursuant to V.R.Cr.P. 42, and Title 13 Section 7554. [M.C.] shall be subject to arrest without a warrant if she places herself within the Town of Poultney, Vermont.

The court subsequently denied M.C.'s motion to vacate the order, amended certain findings, and reaffirmed the order. This appeal followed.

First, M.C. contends the provision of the order prohibiting her from being in the Town of Poultney was an abuse of discretion and a violation of her constitutional right to travel. Although the court undoubtedly enjoys broad discretion in crafting a protective order, see *In re J.S.*, 153 Vt. 365, 370, 571 A.2d 658, 661 (1989), this discretion is not without limitation. As we have observed, the court's power is "limited to prohibiting such conduct that tends to defeat execution of the court's disposition order." *In re B.F.*, 157 Vt. 67, 71, 595 A.2d 280, 282 (1991); see 33 V.S.A. § 5534 (court may issue protective order when it finds that "conduct is or may be detrimental or harmful to the child, and will tend to defeat the execution of the order of disposition"). The court here explained that the purpose of the case plan adopted in the disposition order was to insulate the minor from the stress and fear induced by contact with M.C., and to permit the development of a healthy new relationship through gradual contact. Based upon the record evidence and findings, it is clear that M.C. engaged in a sustained pattern of conduct subversive of these purposes.

The question remains, however, whether it was necessary to prohibit M.C. from placing herself anywhere within the Town of Poultney in order to effectuate the goals of the disposition order. Except for the paper airplane incident, none of M.C.'s conduct necessarily involved her presence within the Town of Poultney. Moreover, all of her efforts to communicate with the minor through nonapproved channels were specifically addressed by other provisions of the protective order enjoining M.C. from contacting the minor "at home, on the street, or elsewhere, by phone, mail or through third parties," from placing herself within 1000 feet of the minor, and from hiding messages in or on toys, books, or gifts. These provisions were consistent with the limited relief sought by the State in its motion, which requested only a noncontact order, and at the hearing itself, where the State asked merely that M.C. be prohibited from contacting the minor child or the foster parents at the home, on the street, or elsewhere, by telephone or through third parties. Although the townwide ban might, as the court stated, provide the child an additional sense of security, the record evidence does not support a finding that such broad relief was necessary to effectuate

the purposes of the case plan. Accordingly, we are compelled to conclude that the court abused its discretion in excluding M.C. entirely from the Town of Poultney.

In view of our conclusion that the court exceeded its statutory authority in excluding M.C. from the Town of Poultney, we need not consider the additional claim that the provision violated M.C.'s constitutional right to travel. Nor need we address the validity of that portion of the protective order which provided that M.C. would be subject to arrest without a warrant if she placed herself within the Town of Poultney; having invalidated the townwide ban, the corollary arrest provision must necessarily fail, as well.

■ Next we consider M.C.'s claim that the court exceeded its authority in providing that a violation of the balance of the protective order would "result in criminal contempt charges and arrest pursuant to V.R.Cr.P. 42, and Title 13 Section 7554." Criminal contempt is generally distinguished from civil contempt by the nature of the relief asked for and the purpose of the order. The purpose of a criminal contempt proceeding is punitive, and the purpose of a civil contempt proceeding is coercive. See *Russell v. Armitage*, 166 Vt. 392, 407, 697 A.2d 630, 640 (1997) (Morse, J., concurring) (quoting *In re Sage*, 115 Vt. 516, 517, 66 A.2d 13, 14 (1949)). Accordingly, in civil contempt proceedings the prison sentence is indefinite; the contemnor stands committed only until he or she is able to purge the contempt by complying with the underlying order. In criminal contempt the sentence is definite, as its purpose is punitive, and "'no amount of repentance will remit it.'" See *id.* (quoting *Town of Nottingham v. Cedar Waters, Inc.*, 385 A.2d 851, 854 (N.H. 1978)). As the United States Supreme Court has explained, "a fixed sentence of imprisonment is punitive and criminal if it is imposed retrospectively for a 'completed act of disobedience,' . . . such that the contemnor cannot avoid or abbreviate the confinement through later compliance." *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 828-29 (1994) (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 443 (1911)).

We must first address whether a violation of the court's protective order may serve as the basis for a criminal contempt prosecution. The authorities cited in the family court's order do not provide such a basis. Criminal Rule 42 is entirely procedural and does not answer when conduct may be prosecuted as criminal contempt. See Reporter's Notes to V.R.Cr.P. 42 (rule, like its federal counterpart, is exclusively procedural and "does not define the substance of a

criminal contempt"). 13 V.S.A. § 7554 deals with conditions of release on bail and contains no definition of what is criminal contempt.

The protective order statute, 33 V.S.A. § 5534, does not directly provide the consequences of a violation of a protective order. A later section in the juvenile proceedings chapter of Title 33, 33 V.S.A. § 5539, does, however, provide that the court has the "power to punish any person for contempt of court for disobeying an order of the court or for obstructing or interfering with the proceedings of the court or the enforcement of its orders." We see no reason that the contempt authorization would not be applicable to disobedience of a protective order. We must, however, determine whether the contempt authorized is civil or criminal in nature.

Absent explicit authorization of the use of a criminal contempt sanction for violation of a protective order, we turn to other statutory sources and case law for guidance. See Reporter's Notes to V.R.Cr.P. 42; *State v. Allen*, 145 Vt. 593, 600, 496 A.2d 168, 172 (1985) (substantive legal standards for contempt are set by common law and statute); *State v. Dragon*, 131 Vt. 500, 502, 310 A.2d 24, 26 (1973) (absent constitutional or statutory provisions defining scope of contempt power, "'the common law governs'") (quoting *State v. Hildreth*, 82 Vt. 382, 384, 74 A. 71, 72 (1909)). In this regard, we note that the contempt power in general has long been considered among the court's inherent powers, "indispensable to secure . . . 'the respect and obedience due to the court and necessary for the administration of justice.'" *Allen*, 145 Vt. at 600, 496 A.2d at 172 (quoting *In re Cooper*, 32 Vt. 253, 258 (1859)); see also *Andrew v. Andrew*, 62 Vt. 495, 498, 20 A. 817, 818 (1889) ("the authority to make the order carries with it the power to enforce it"); *Young v. United States*, 481 U.S. 787, 795 (1987) ("That the power to punish for contempts is inherent in all courts, has been many times decided and may be regarded as settled law."). The power, in particular, to punish disobedience to judicial orders "is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority." *Young*, 481 U.S. at 796.

Recognizing that "the line of demarcation between the two classes [civil and criminal] is often shadowy and does not run true," *In re Morse*, 98 Vt. 85, 90, 126 A. 550, 551 (1924), relevant case law does provide some guidance in determining which class is appropriate. Thus, in *Morse* we generalized that "criminal contempt is one committed directly against the authority of the court, tending to impede or interrupt its proceedings or lessen its dignity, while a civil contempt is one which operates mainly to deprive another party to a

suit of some right, benefit, or remedy to which he is entitled under an order of the court." *Id.* A protective order is issued when the court finds that a person's conduct will *"defeat the execution of the order of disposition made or to be made"* with respect to a juvenile and "may be detrimental or harmful to the child." 33 V.S.A. § 5534(2) (emphasis added). By its very nature a violation of such an order must tend "to impede or interrupt" the proceedings of the family court in protecting children. Protective orders that enjoin conduct detrimental to the safety of children plainly fall within that category of judicial orders the enforcement of which vindicates compelling public interests.

■ Further, criminal contempt is the only practical method of enforcing the order present here. As noted above, if the punishment is imposed for a "completed act of disobedience," *International Union*, 512 U.S. at 828, and there is no coercive purpose left to be served, the sentence must of necessity be a determinate one and therefore the contempt is criminal in nature. See D. Dobbs, Handbook on the Law of Remedies § 2.9, at 97 (1973). If a court were to incarcerate M.C. for violating the protective order, the violations would necessarily cease, but M.C. could perform no act of compliance which would purge the contempt. If the family court necessarily has the power to enforce its order, *Andrew*, 62 Vt. at 498, 20 A. at 818, it must be through criminal contempt.

We note that the Legislature has reached a similar conclusion in explicitly authorizing the use of criminal contempt for violation of abuse prevention orders. See 15 V.S.A. § 1108(e). In other states where the legislature has failed to specify the enforcement remedy, or has not specified which class of contempt may be invoked, the courts have found that criminal contempt is appropriate. See *Mabry v. Demery*, 707 A.2d 49, 51 (D.C. Ct. App. 1998) (although legislature specified only that violation of abuse prevention order was contempt, court held such a violation was criminal contempt); *State v. Hart*, 708 P.2d 1137, 1139 (Or. 1985) (criminal contempt must be available for violation of abuse prevention order "to provide legal teeth for enforcement of court orders against violators"). We take these cases as persuasive authority for our holding.

■ Although we have answered the threshold question in support of the order issued here, our inquiry has not ended, and we must look at the specific provisions of the order. The order specified that "violation will result in criminal contempt charges and arrest."

Except in cases appropriate for summary disposition, criminal contempt must be prosecuted as any other crime. See V.R.Cr.P. 42(b); cf. 15 V.S.A. § 1108(e) (criminal contempt for violation of abuse prevention order may be prosecuted by state's attorney). It can be initiated by an "order of arrest." V.R.Cr.P. 42(b). Without attempting to limit how prosecution will occur, we believe it goes too far to say that prosecution and arrest will automatically follow from a violation. We note that the Legislature has directed that those subject to an abuse prevention order be warned that violation "may . . . be prosecuted as criminal contempt punishable by fine or imprisonment, or both." 15 V.S.A. § 1103(i). We conclude that a similar warning would be appropriate here.

The order also cited to 13 V.S.A. § 7554, the main statute providing for orders with respect to release prior to trial. Apparently, the family court was conveying that this section would govern pretrial release in the case of an arrest for violation of a protective order. This may be true, but we believe that citation to a bail statute serves only to confuse the message conveyed by the order. As a result, we strike it from the order.

Ordinarily, we would remand for the family court to correct the order in accordance with this opinion, see *Persons v. Lehoe*, 150 Vt. 582, 587, 554 A.2d 681, 683 (1988), but in this case we conclude that the record provides an adequate basis to amend the order here. See *id.* Accordingly, our mandate amends the order and leaves no necessity for further action in the family court.

*Sections 1 and 3 of the family court's protective order are amended to read:*

> *1. [M.C.] is restrained and enjoined from having any contact with C.W. at home, on the street, or elsewhere, by phone, mail or through third parties. [M.C.] must stay 1,000 feet away from C.W. at all times and places.*

> *3. Violation of this order may result in prosecution for criminal contempt, punishable by fine or imprisonment, or both.*

*As amended, the protective order is affirmed.*