**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

Secretary, Vermont Agency of
Natural Resources, Plaintiff,   }
                                       }
                                       }     Docket No. 70-5-03 Vtec

v                                     }
                                       }
                                       }

James Thurber, Respondent.

Decision and Order on Petition for Contempt

Respondent James Thurber represents himself; the Secretary of the Agency of Natural Resources is represented by Catherine Gjessing, Esq. The Court held an evidentiary hearing on the Agency= s petition to hold Respondent in contempt for failure to carry out the terms of an Assurance of Discontinuance entered as a Court Order.

In April 2003 Respondent and the Secretary of the Vermont Agency of Natural Resources (ANR) entered into an Assurance of Discontinuance in Environmental Court, resolving an asserted violation of 10 V.S.A. ' 6605(a) and of ' 6-302(d) of the Vermont Solid Waste Management Rules, at an apartment building owned by Respondent at 4 Mill Road in Springfield, Vermont. The description of the facts and violations in the Assurance of Discontinuance describes Respondent= s disposal of household trash and swimming pool-related equipment in a 576-square-foot in-ground swimming pool, and the subsequent burial of the pool and its contents, in the winter and spring of 2001-2002.

The Assurance of Discontinuance was entered as an order of the Court on May 2, 2003. A copy of the Court Order and the Assurance of Discontinuance was served on Respondent on May 12, 2003. 10 V.S.A. Chapter 201. The Assurance Court Order required Respondent to pay a penalty of $1,000 in four installments of $250 each on June 1, 2003; September 1, 2003; December 1, 2003; and March 1, 2004. These payments are not at issue in the present proceedings.

Paragraph B of the Assurance Court Order also required Respondent, within 30 days of the entry of the Assurance Court Order, to A excavate and sort the waste, and perform all necessary site excavations for the purpose of determining whether Respondent is eligible[1] [for] an Insignificant Waste Management Event Determination [sic] Approval.@ Paragraphs D[2] and E required him to notify the Waste Management Division and apply for the Insignificant Waste Management Event Approval, both at least five business days before beginning the excavation. If the site were eligible for and were to receive the Insignificant Waste Management Event Approval, the Assurance Court Order provided that Respondent A may bury the inert materials on the property in conformance with the approval.@ It also provided, in a footnote, the criteria for such a burial site and the definition of inert materials.

Paragraph F of the Assurance Court Order also required Respondent, within 60 days of the entry of the Assurance Court Order, to dispose of all those materials not qualifying as inert and not covered by the Insignificant Waste Management Event Approval at a certified waste disposal facility, and to provide the Agency with receipts for such disposal within ten days of the disposal.

As of the hearing in this matter in mid-October 2003, Respondent had paid the first two installments of the penalty, but had not carried out either the excavation or the disposal required by the Assurance, and had not applied for the IWMEA. He claimed a financial inability to pay

market prices for the rental of a waste container from a container company for $700. He claimed a financial inability to pay market prices for an excavator to perform the excavation, stating his intention to have the work done by his brother= s excavation and paving company, which he claimed would be unavailable for this work until at least the winter of 2003-2004.

However, when negotiating and entering into the Assurance of Discontinuance in April of 2003, Respondent did not disclose these intentions or limitations to the Agency, nor did he request an extended schedule for the work he himself agreed to do in that document. It is not acceptable to the enforcement of Vermont= s environmental laws under 10 V.S.A. Chapter 201 for any respondent to negotiate and obtain the benefit of a negotiated resolution through an Assurance of Discontinuance, and then to fail to comply with the respondent= s side of the agreement.

Respondent now also argues that the disposal of the waste in the lined swimming pool is at least as safe for the environment as would be moving it to a lined landfill; however, even if that is true, it does not relieve him of the responsibility of applying for approval to do so, so that the Agency can evaluate its environmental safety.

Respondent is self-employed in a television and stereo business which he describes as > not lucrative.= Respondent owns four rental properties, including the one on the subject property, and depends on the rental properties for his income. All four are on the market for sale, and at the hearing he requested postponement of the work until one of his properties sells.

The subject property has seven rental units, renting for $400 to $525 per month. It is at full capacity, although one of the units does not pay rent, and is therefore producing approximately $3,000 per month (or approximately $100 per day) in rental income. Respondent loses money on one of his other buildings, and owes substantial amounts in back taxes to the Town, the State, and the federal government, and for past water bills on his properties.

Respondent did not show a financial inability to apply for the IWMEA or to do the work required by the Assurance of Discontinuance, but only that it was not his priority for the expenditure of the revenues from his rental properties, in comparison with his other obligations. The evidence showed that the required work could be funded from the revenue from the building on the subject property or from the revenues from Respondent= s other properties. Respondent did not present evidence as to the cost of rental of an excavator; only that he would prefer to have his brother do the work and that he > could not afford= to rent an excavator at market prices.

Accordingly, we find that Respondent is in contempt of the Assurance Court Order, as he has failed to comply with Paragraphs B, D and E of that order, and has not shown a financial inability to comply with those three paragraphs of the order.

Although the Agency= s moving papers cite V.R.C.P. 70, in the present case the Agency has not requested an order under that rule allowing the Agency to have the work done and to recover the cost by a lien on Respondent= s property, even though his desire to sell the property may have made that an effective remedy. Accordingly, the Court will impose additional prospective monetary consequences of Respondent= s failure to obey the order that he himself negotiated and entered into.

V.R.C.P. 58 Judgment Order:

Based on the findings, conclusions, and reasoning of this decision, pursuant to 12 V.S.A. ' ' 121-123; V.R.C.P. 76(a)(2); V.R.C.P. 70; and the Court= s inherent power of contempt to enforce its orders, see In re C.W., 169 Vt. 512, 517 (1999) and Young v. United States, 481 U.S. 787, 795 (1987); it is hereby ORDERED that Respondent is in civil contempt of the Assurance Court Order

entered in this matter on May 2, 2003 and served on Respondent on May 12, 2003. To purge himself of contempt Respondent shall comply with the Assurance Court Order as follows:

Respondent shall apply for the IWMEA (Paragraph E of the Assurance, 1st sentence) by February 26, 2004, or shall pay a penalty of $50 per day for each day after that date that he has not filed the application. By March 12, 2004, Respondent shall notify the Agency of the proposed excavation date (Paragraph D of the Assurance) or shall pay a penalty of $25 per day for each day after that date that he has not filed the notification. By March 31, 2004, (or such other date as the parties agree to in writing and file with the Court as an agreed amendment to this order), Respondent shall excavate and sort the waste or shall pay a penalty of $50 per day for each day after that date that he has not excavated and sorted the waste. Within 21 days of a written request from the Agency to perform any other site investigation necessary for the Agency to rule on the site= s eligibility for the IWMEA (Paragraph B of the Assurance), Respondent shall perform such additional site investigation, or shall file with the Court a request for an order amending this requirement, or shall pay a penalty of $25 per day for each day after that date that he has not performed the additional requested site investigation. The penalties in this paragraph are calculated with reference to the income generated by the building on the subject property.

If Respondent receives an IWMEA, the remainder of the Assurance of Discontinuance remains in effect to govern his activities. Any future failure of Respondent to comply with Paragraph E (second sentence) or Paragraph F of the Assurance, or any requests to adjust the schedules applicable to those paragraphs of the Assurance, may be brought before the Court by either party; otherwise, this order again concludes this case.

Done at Barre, Vermont, this 5th day of February, 2004.

_____
Merideth Wright
Environmental Judge

---

## Footnotes

1.    The Assurance of Discontinuance did not contain a citation to the section of the Solid Waste Management Rules establishing eligibility for an Insignificant Waste Management Event Approval, but it did provide the criteria for such an approval in footnote 1 of the Assurance of Discontinuance.

2.    There was no Paragraph C.