25VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.      25-AP-007

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

JULY TERM,   2025

| | |
|---|---|
| Robert Conway\* v. Bobbi Jo Belden & Kevin Keefe | } APPEALED FROM: |

APPEALED FROM:

Superior Court, Rutland Unit, Civil Division
CASE NO. 22-CV-03980
Trial Judge: Alexander N. Burke

In the above-entitled cause, the Clerk will enter:

Plaintiff Robert Conway appeals the trial court's order denying his motion to hold defendants Bobbi Jo Belden and Kevin Keefe in contempt.  We affirm.

In November 2022, plaintiff filed a complaint seeking a declaratory judgment that he had the right to access personal property contained in a garage on defendants' property.  He also asserted claims of promissory estoppel, unjust enrichment, and conversion.  Defendants filed counterclaims for declaratory judgment, breach of contract, fraudulent misrepresentation, fraudulent inducement, conversion, unjust enrichment, and promissory estoppel.

The trial court held a bench trial in April 2024 and issued a written order in June 2024 in which it made the following findings.  Plaintiff formerly owned property in Castleton containing a home, a garage, a pole barn, and numerous other outbuildings.  Plaintiff stored personal property inside and outside the buildings, including heavy machinery.  He ran an automotive and small-engine repair business out of the garage, where he installed a mechanic's lift.  Plaintiff estimated the value of his personal property to be between $125,000 and $150,000.

In 2021, plaintiff decided he could no longer maintain the property and asked defendant Belden, his former stepdaughter, if she wanted to buy the property for $120,000.  Defendants Belden and Keefe agreed to purchase the property and paid a deposit of $7000 to secure the deal.  Due to financing complications and other issues, the closing did not take place until April 2022.

At the closing, the parties signed a personal property agreement (PPA) under which plaintiff was required to immediately remove his property from the residence and had until April 29, 2025, to remove his belongings from the garage.  The PPA stated that "[a]nything left upon the property thereafter shall become the property of the Buyers."  Defendants also signed a promissory note drafted by plaintiff's attorney, which required defendants to pay plaintiff

$13,000 in monthly increments of $25 per month, plus half of defendants' income-tax refund each year.

Plaintiff removed his personal property from the home prior to closing. He subsequently returned several times to remove other belongings. The parties began to disagree over who owned what property and who had the right to access the garage. In September 2022, defendant Belden posted a notice on the garage door stating that plaintiff was not allowed to enter the garage. In response, plaintiff filed this action.

In its June 2024 order, the court held that the PPA was enforceable and meant that plaintiff owned the items in the garage and had until April 29, 2025, to remove them. The court held that the PPA only applied to items in the garage and did not give plaintiff the right to enter other parts of the property or take possession of any items outside the garage, and did not prohibit defendants from accessing the garage. All personal property located outside the garage was now the property of defendants. The court ordered defendants to give plaintiff reasonable access to the garage to remove his property before April 29, 2025. The court concluded that the promissory note was void for lack of consideration and that plaintiff and defendants failed to establish any of their other claims.

In November 2024, plaintiff moved to hold defendants in contempt, alleging that they had prevented him from accessing the garage. The court held a hearing on the motion in December 2024. At the hearing, plaintiff testified that he had gone to the property in late July with trailers and paid movers, and defendant Belden had refused to let him enter the garage and said he had nothing left in the garage. The court admitted a list of items plaintiff alleged he had left in the garage. Plaintiff asked the court to award him $1295 for the money he paid to hire the movers and gasoline expended on the trip.

Defendant Belden testified that plaintiff had come unannounced and tried to take items that were outside the garage. She testified that she had moved all of plaintiff's possessions into one bay of the garage because the other door was broken. She allowed plaintiff to remove everything that he wanted from the garage except for the mechanic's lift, because it was a fixture. She testified that plaintiff left behind a huge pile of garbage and used the garage as a bathroom. Plaintiff then returned unannounced with a police officer, whom he asked to arrest her. Defendant testified that she had never seen the list of items provided by defendant before.

The court denied the motion for contempt, concluding that defendants did not willfully violate the June 2024 order. The court found Belden to be credible in her testimony that plaintiff went to the property multiple times demanding access to the garage with little or no advance notice to defendants. The court explained that the PPA's requirement that plaintiff have reasonable access to the garage did not mean he had an unlimited right of access. It stated that the parties needed to coordinate a date and time for plaintiff to get his things. The court explained that the PPA gave plaintiff the right to access the garage until April 29, 2025, and defendants could not prevent him from access, but that plaintiff had to give defendants advance notice. Plaintiff appealed.

We see no basis to reverse the court's order denying plaintiff's motion for contempt. "[A] civil contempt is one which operates mainly to deprive another party to a suit of some right, benefit, or remedy to which he is entitled under an order of the court." In re C.W., 169 Vt. 512, 517-18 (1999). "Contempt is generally a tool used where a party's violation is willful, and coercive measures are necessary to ensure compliance." Obolensky v. Trombley, 2015 VT 34, ¶ 42, 198 Vt. 401. The court has discretion in deciding whether to hold a party in contempt. Id.

Under the trial court's June 2024 order, defendants were required to give plaintiff reasonable access to the garage. The court found that although defendants had refused access to plaintiff on at least one occasion, this was not a willful violation of the order because plaintiff had appeared without warning and demanded access. Plaintiff conceded at the contempt hearing that he had not arranged a specific date and time to access the garage before showing up at defendants' property. At the time of the contempt hearing, plaintiff still had several months left to arrange to retrieve his belongings. Under these circumstances, the court acted within its discretion in declining to hold defendants in contempt. See id. ¶ 43 (concluding trial court acted within its discretion in declining to hold defendants in contempt for mowing grass between properties where violation of order created only nominal damages and was natural consequence of fence built by plaintiffs).

Plaintiff asserts in his brief that defendants have continued to deny him access since the contempt hearing, moved his things around, and used or damaged his belongings. These allegations are new and are not part of the record. We therefore will not consider these claims. See Hoover v. Hoover, 171 Vt. 256, 258 (2000) (explaining that this Court's review is confined to evidence presented to trial court and we cannot consider matters not in record).

As for plaintiff's assertion that defendants still owe him $13,000 under the promissory note, the court found that the note was void and unenforceable in its June 2024 order. Plaintiff did not appeal that order. Accordingly, it is final and no longer subject to challenge. See Town of Pawlet v. Banyai, 2024 VT 13, ¶ 8 ("It is well settled that a court's final judgments are conclusive upon parties and cannot be collaterally attacked." (quotation omitted)).

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Karen R. Carroll, Associate Justice


_____
Nancy J. Waples, Associate Justice

3