In re Frederick A. Flint.

May Term, 1939.

Present: Moulton, C. J., Sherburne, Buttles, Sturtevant and Jeffords, JJ.

Opinion filed October 3, 1939.

*Lawrence C. Jones,* Attorney General, for the State.

*Fred E. Gleason* for the respondent.

JEFFORDS, J.   This is a presentment charging the respondent with contempt of this Court for having engaged in the unlawful practice of the law.   The case has been here once before on demurrer of respondent to the presentment.   The demurrer was overruled.   See *In re Flint,* 110 Vt. 38, 1 Atl. (2d) 718.   The case was then sent to a commissioner to find and report the facts, and it is now before us on his report.

The facts constituting such unlawful practice as alleged in the presentment are fully set forth in the former opinion and we need not repeat them here.   It is sufficient to say that the respondent is charged with such unlawful practice in connection with negotiating and effecting the settlement of a claim of one Pike against one Whipple for the alienation of affections of Pike's wife by Whipple.   He is also so charged in connection with settling various claims against Pike including one for Burke Brothers Garage on which suit had been brought and which was pending at the time of settlement.

The facts found, which are here material, are these: On November 20, 1937, Pike was arrested on a warrant returnable to the Caledonia county municipal court.   The arrest was made by the sheriff of Rutland county, and the respondent, who is the sheriff of Caledonia county and a registered law student, came to Rutland to bring Pike to St. Johnsbury.   On the return journey there was some talk between the respondent and Pike, concerning certain relations between Whipple and Pike's wife. Pike said that he had certain letters which Whipple had written to his wife; that Whipple was worth $100,000; that he, Pike, had been to Springfield, Vermont, to investigate Whipple and he thought that he had a good case against him.   That Pike asked the respondent his opinion as to the case and said that he had already been to an attorney, and the respondent answered, ''As long as you have been to an attorney, I don't want nothing to do with it.''

St. Johnsbury was reached early in the morning of November 21st, and the respondent committed Pike to jail.   Later on that morning Pike and the respondent had some conversation about the claim against Whipple.

The respondent at Pike's request or direction telephoned to Whipple and asked him to come down to the jail. When Whipple arrived the respondent said to him that Pike claimed to have a case against him and wanted to "crack down" on him for some letters that he, Whipple, had written to Pike's wife. Whipple asked the respondent what he would advise concerning the matter, and the respondent answered that he believed that if it was his case, he would try to settle it in some way and told him that Pike was in need of money, and Whipple answered that he would be willing to pay two or three hundred dollars. Whipple asked the respondent to see what kind of a settlement he could make for Whipple with Pike. Respondent said that he would talk with Pike.

In this conversation at the jail the respondent told Whipple only what he (respondent) would do if the case were against him, and that if Pike's claim was as he said and he (respondent) were in Whipple's place and could settle it for $200 or $300, he would do so.

Whipple went home and returned to the jail later in the day, when respondent told him that Pike claimed that he was worth $100,000 and had a big home in Springfield, and that Whipple ought to settle for $2,000 or $2,500. The respondent said, however, that this amount was ridiculous and that he believed the settlement could be made for less. Respondent also said that if the letters were damaging, as they must have been from Pike's talk, that if Pike had on him (the respondent) what he claimed to have on Whipple, he would crawl on his knees to get them back.

Negotiations of settlement were then had; the respondent conferred with Pike and Whipple in turn and acted as a "go-between" in the matter. After talking with both of them the respondent told them that it was a matter for them to decide. At the end of the negotiations Pike was present and finally agreed to settle for the sum of $1,000. Pike then left the room and Whipple said that he might as well settle in cash for that figure and asked the respondent to get Stanwood Brooks, the state's attorney, to come to the office and prepare a release. Brooks came and the respondent prepared a paper, State's exhibit 1, which reads as follows:

474

"St. Johnsbury, Vt.
Nov. 21, 1937

I, Wendell Pike, of Fairhaven, Vt., formally of St. Johnsbury, Vt. hereby authorize Frederick A. Flint, of St. Johnsbury, Vt. to settle any and all civil actions I may have against one Howard Whipple of Springfield, Vt. and now located in St. Johnsbury, Vt. Especially do I authorize the said Frederick A. Flint to settle with the said Whipple any action I may have against the said Whipple for alienating my wife's affections (Mary O'Grady Pike) I have agreed this date to accept One Thousand Dollars.

(Signed) Wendell H. Pike

Witness

H. Stanwood Brooks''

The release was signed by Pike, witnessed by Brooks and delivered to the respondent. At the same time respondent prepared State's exhibit 6 which is as follows:

"St. Johnsbury, Vt.
Nov. 21, 1937.

I, Howard Whipple, formally of Springfield, Vt. and now of St. Johnsbury, Vt. working for the Fish and Game Dept. hereby state that in settling an action which Wendell Pike of Fairhaven, Vt. may have against me, Frederick A. Flint of St. Johnsbury, Vt. affecting the settlement, that said Flint, did not use any threats, coersion, promises of any kind and that I fully understand the settlement and have this date requested the said Flint to affect a settlement between the said Wendall Pike and myself this date.

(Signed) Howard F. Whipple

Witness

H. Stanwood Brooks.''

Brooks gave no legal advice concerning the claim but Pike told him that he had a good case against Whipple. Brooks also had some conversation with Whipple regarding the contents of the releases.

The next day, November 22nd, the respondent took Pike to the Caledonia municipal court in Lyndonville, where a *nolle prosequi* was entered in the case against him on payment of the costs. These costs amounted to $57.55, which were paid by the respondent.

The two then went back to St. Johnsbury where they met Whipple, who obtained the sum of $1,000 from a bank, and all three proceeded to Rutland where Pike went to a lawyer's office and returned with the letters, which he handed to the respondent, who gave them to Whipple. Whipple then gave the $1,000, which was in cash, to the respondent and the respondent delivered the release to Whipple. The respondent and Pike then went to a hotel, where Pike signed a receipt and gave it to the respondent. This receipt is State's exhibit 2 and is as follows:

"Rutland, Vt.
Nov. 22, 1937

Received from Frederick A. Flint, of St. Johnsbury, Vt. One Thousand Dollars which he received from Howard Whipple in settlement of any action I might have had or did have against the said Howard Whipple.

(Signed) Wendell H. Pike."

It fairly appears from the findings that of the $1,000 respondent retained $200 to settle the Burke Brothers claim heretofore referred to. It is stated in the findings that: "It was claimed by the respondent, and virtually conceded by Pike, that the agreement as to this $200 was that if the claim, which amounted to about $190, could be settled for less the respondent could have the balance." It also fairly appears that respondent retained a sufficient sum to reimburse himself for the costs paid in the criminal action and to cover a claim for $42 against Pike on which the criminal action was based and to pay $6.75 taxes

owed by Pike and to cover telephone charges in connection with the business.

Pike paid respondent when they were in Rutland the sum of $25 apparently as compensation for the respondent's time and trouble. Pike claimed that he received less than $100 out of the $1,000 because respondent kept $600 in addition to the sums above referred to. The commissioner reported that he was unable to find that respondent had kept back this $600 but the findings do show that even according to the respondent he, the respondent, made about $124 after expenses connected with the business had been paid.

On December 3 the respondent came again to Rutland and met Pike. The respondent on that occasion settled the Burke claim by a payment of the sum of $25 to the creditor and $10 to the creditor's attorney. Subsequently he saw Pike and told him the terms of the settlement. Pike complained that the respondent was making too much money out of him, and the respondent then returned to Pike the sum of $50. At that time Pike signed and delivered to the respondent a receipt, which is as follows:

"Dec. 3rd 1937

This date I have settled with Frederick A. Flint, of St. Johnsbury, Vt. all accounts, dues, accounting, reckoning of every name and nature. This is a full settlement and full receipt, except eighteen dollars held on Gilman a/c.

(Signed) Wendell H. Pike"

We have had occasion very recently, in two cases, to determine what constitutes the practice of law. See *In re Flint*, *supra*, and *In re Ripley*, 109 Vt. 83, 191 Atl. 918. In these opinions many cases from other jurisdictions are cited and quoted from. It is needless to restate our holdings on this matter as before given or again review the cases which we have heretofore cited with approval.

Although the findings do not support all of the allegations in the presentment tending to show the practice of law by the respondent, the facts reported are so substantially as alleged as to bring the case within the spirit and meaning of our former

opinion in this case and leave no doubt but that the respondent did unlawfully engage in such practice.

Although the commissioner failed to find that the respondent gave certain advice to Pike as alleged, it is found that he did give advice to Whipple. This advice was of a legal nature, as its rendering involved a knowledge of the law to some degree. Respondent drafted State's exhibits 1 and 6, which were documents of a legal character. He negotiated and effected a settlement of the Whipple claim and did this apparently after it had been placed in the hands of an attorney. He settled the Burke suit, then pending in court. Finally, he received pay for such advice and services in matters connected with the law. As stated in our former opinion: "In other words, he was practicing law."

The facts here are analogous to those in *In re Duncan*, 83 S. C. 186, 65 S. E. 210, 24 L. R. A. (N. S.) 750, 18 Ann. Cas. 657, a leading case on this subject which is cited with approval, and quoted from, in our two former opinions, *supra*. They are also similar to those in *Fink* v. *Peden*, (Ind.) 17 N. E. (2d) 95, 99, a case involving the settlement of a claim. The court in the course of its opinion in the latter case says:

> "A person who gives legal advice to clients and transacts business for them in matters connected with the law in the settlement, adjustment, and compromise of claims is engaged in the practice of law."

The respondent attempts to avoid the effect of the advice to Whipple, because in giving it, respondent said that was what he would do if the case were against him, etc. But the language used by respondent is often used by lawyers in connection with the giving of advice to clients concerning their affairs and cannot alter the result reached. The same can be said of the finding that respondent told Pike and Whipple at one time that it was a matter for them to decide.

The respondent argues that the facts show that he acted merely as a friend in all these transactions and that there was nothing of a business nature connected with them. The answer to the first claim is that he may have started only as "the

friend," but he soon became and finished as "the lawyer." We are not called upon to decide whether "business nature" of the transactions is a necessary element to constitute the unlawful practice of the law as the receipt of the fee by the respondent stamps the transactions as of that nature. *People* v. *Ring*, 26 Cal. App. (2d) Supp. 768, 70 Pac. (2d) 281, 284.

*The respondent is adjudged guilty of a contempt of this Court.*