NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 85

No. 2016-043

| | |
|---|---|
| In re Serendipity Morales | Supreme Court |
| | Original Jurisdiction |
| | March Term, 2016 |

Alexander N. Burke, Bennington County Deputy State's Attorney, Bennington, for Plaintiff.

Kelly Green and Emily Tredeau, Appellate Defenders, Montpelier, for Defendant.

William H. Sorrell, Attorney General, and John Treadwell, Assistant Attorney General, Montpelier, for Amicus Office of Attorney General.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **ROBINSON, J.** This case calls upon us to consider the applicability of the prohibition against the unauthorized practice of law to the activities of a "jailhouse lawyer." In February 2016, the State filed an information in this Court against Serendipity Morales, an inmate at the Marble Valley Regional Correctional Center, alleging she engaged in the unauthorized practice of law by helping fellow inmates in their cases, including performing legal research and drafting motions. In this probable cause review, we consider whether there is probable cause to believe that defendant has committed the alleged offenses. We conclude that there is not and accordingly dismiss the State's information without prejudice.

¶ 2. The information filed by the State charges Morales with six counts of unauthorized practice of law, in violation of 4 V.S.A. § 901 and Administrative Order No. 41,

§ 2.* In support of these charges, the State included an affidavit from Sergeant Lloyd Dean, an officer for the Bennington County Sheriff's Department. In that affidavit, Sergeant Dean alleges that Morales prepared court filings for five fellow inmates. These inmates reported to Dean that: (1) they had heard Morales was familiar with the legal process; (2) they asked Morales for assistance in reviewing and preparing various legal filings on their behalf; (3) Morales assisted each of them, including drafting handwritten motions which the respective inmates reviewed and signed; and (4) Morales did not request or accept any payment for these services. Sergeant Dean further alleged that each of the five inmates was represented by counsel in the matters in question, and that Morales is not a licensed attorney in the State of Vermont. The State does not allege that Morales ever signed pleadings on behalf of the other inmates, held herself out as a licensed attorney, or received any payment for her services.

¶ 3. After we received the State's information, we directed the Bennington County State's Attorney's Office to show cause as to why the information should not be dismissed on the basis that, even if the factual allegations were true, Morales had not committed the common law crime of unauthorized practice of law. We issued a second order clarifying our directive, and informed the State that this case presented a fundamental legal question concerning the scope of the offense of unauthorized practice of law, particularly as it relates to the rights of prison inmates to access the justice system. We scheduled a show-cause hearing to determine whether

---

* This Court has original and exclusive jurisdiction over the unauthorized practice of law. In re Morse, 98 Vt. 85, 94-95, 126 A. 550, 553 (1924) (noting that this Court has implied power to regulate unauthorized practice (citing McCulloch v. Maryland, 17 U.S. 316 (1819)); see also 4 V.S.A. § 901 (expressly acknowledging this Court's authority to regulate practice of law before courts of this state). Accordingly, the prohibition against the unauthorized practice of law is not reflected in statute. This Court has codified the prohibition in Administrative Order No. 41, which provides: "The practice of law without a license hereunder is prohibited and may be punished as contempt." A.O. 41, § 2. The State's information is essentially a request for a finding by this Court, in the exercise of its plenary authority over the admission of attorneys and the practice of law before the courts of Vermont, that defendant is in criminal contempt. See Morse, 98 Vt. at 90, 126 A. at 551-52.

this case could proceed and informed the parties that we would treat this proceeding like a probable cause determination.

¶ 4. At a probable-cause hearing, the court is required to determine whether "there is probable cause to believe that an offense has been committed and that the defendant has committed it." V.R.Cr.P. 5(c). If there is no probable cause at the Rule 5(c) hearing, then the information is dismissed without prejudice. See State v. Roya, 169 Vt. 572, 572, 730 A.2d 600, 601 (1999) (mem.). At this stage, our role is to simply determine the existence of probable cause, not to reach the ultimate conclusion of whether a crime has in fact been committed. State v. Clark, 2003 VT 29, ¶¶ 2-3, 175 Vt. 506, 825 A.2d 803 (mem.) (holding it was error for trial court to reach "legitimacy of stop" at probable cause hearing because State would not have been "prepared to defend the information at arraignment or suffer dismissal"). But, if "the law is settled that an element of the crime was not met," then a court may find "no probable cause at arraignment." State v. Bresland, 2012 VT 75, ¶ 6, 192 Vt. 644, 57 A.3d 727 (mem.). Accordingly, in order to decide whether there is probable cause, we must determine whether the prohibition of the unauthorized practice of law applies to the alleged facts of this case.

¶ 5. In evaluating this question, we consider the general legal landscape in Vermont concerning the unauthorized practice of law, and then the particular case of legal advice provided by one inmate to another.

I. General Vermont Legal Landscape

¶ 6. This Court has historically defined the unauthorized practice of law broadly, to include not merely holding oneself out as an attorney, but also providing services that require legal knowledge or skill such as drafting legal documents and giving legal advice—at least when one charges a fee for those services. More recent social and legal developments reflect a trend toward a somewhat more purpose-driven approach to defining the scope of the unauthorized practice of law.

3

¶ 7.    In In re Morse, we concluded that an accountant who held himself out as an attorney and signed pleadings and other court filings on behalf of his debt collection business had engaged in the unauthorized practice of law.  98 Vt. at 95, 126 A. at 553.  The defendant ran a debt collection business and regularly issued trustee writs, signed many of them as "attorney" or "acting attorney," brought suits against various parties who were in default, and acted as an attorney before the court in those cases.  In our decision, we emphasized that even though justices of the peace and process servers with whom he did business knew that he was not an attorney, the defendant "acted, and held himself out, as an attorney" and signed pleadings and other court filings.  Id. at 89-90, 126 A. at 551-52.  On that basis, we adjudged him guilty of contempt of this Court.  Id. at 95, 126 A. at 553.

¶ 8.    We articulated a broader definition of unauthorized practice in In re Ripley, 109 Vt. 83, 191 A. 918 (1937).  In that case, the defendant also ran a debt collection agency in which, for a fee, he undertook the obligation of enforcing, securing, settling, adjusting, and compromising a civil claim a Mrs. Spaulding had against a Mr. Stone.  Id. at 85, 191 A. at 918.  The defendant also advised a creditor regarding the liability of Mr. Stone, wrote letters to Mr. Stone threatening him with legal action should he fail to pay the defendant a substantial amount then due and owing, and filed a lawsuit against Mr. Stone.  Id.  We found the defendant in contempt for engaging in the unauthorized practice of law.  Id. at 87, 191 A. at 919-20.  In so concluding, we explained:

> According to the generally understood definition of the practice of law in this country, it embraces the preparation of pleadings, and other papers incident to actions and special proceedings, and the management of such actions and proceedings on behalf of clients before judges and courts, and, in addition, conveyancing, the preparation of legal instruments of all kinds, and, in general, all advice to clients and all action taken for them in matters connected with law.

Id. at 86, 191 A. at 919.

4

¶ 9. Subsequently, in In re Flint, we concluded that a law student who, for a fee, offered an individual advice about an ongoing dispute, and ultimately negotiated a settlement of the case on the individual's behalf, had engaged in the unauthorized practice of law. 110 Vt. 471, 477-78, 8 A. 2d 655, 657-58 (1939). We emphasized the following facts: (1) the defendant gave advice to a lay person; (2) the advice was of a legal nature and required some legal knowledge; (3) the defendant negotiated and effected a settlement; and (4) he received payment for his advice and services. Id. at 477, 8 A.2d at 657. We further noted that "A person who gives legal advice to clients and transacts business for them in matters connected with the law in the settlement, adjustment, and compromise of claims is engaged in the practice of law." Id. We concluded that, although the defendant may have "started out only as [a] friend," he finished as a lawyer. Id. at 477-78, 8 A.2d at 657.

¶ 10. Over twenty years later, this Court concluded that a defendant who, acting as a financial counselor of sorts, created debt-pooling plans allowing each of three families facing financial difficulties to pay off their debts by assigning various financial interests to the defendant, had engaged in the unauthorized practice of law. In re Pilini, 122 Vt. 385, 173 A.2d 828 (1961). In our analysis, we noted that the practice of law "is not confined to performing services in an action or proceeding pending in courts of justice; but in a larger sense includes legal advice and counsel and the preparation of legal instruments and contracts of which legal rights are secured." Id. at 390, 173 A.2d at 831. We elaborated on that statement, noting "practicing as an attorney . . . is the giving of advice or rendition of any sort of service by any person, firm or corporation when the giving of such advice or rendition of such service requires the use of any degree of legal knowledge or skill." Id. (citation omitted). Because defendant in this case "invaded the field reserved for duly licensed attorneys," by providing legal advice and receiving compensation for that advice, he had engaged in the unauthorized practice of law. Id. at 391-92, 173 A.2d at 831-32.

5

¶ 11.    Finally, we have held that a surveyor who, for a fee, drafted deeds, advised parties with respect to certain rights-of-way created in the deeds, and advised parties "as to the type of estate and manner of holding" that would serve to meet their desires and needs, had engaged in the unauthorized practice of law.  In re Welch, 123 Vt. 180, 182, 185 A.2d 458, 460 (1962).  We explained that the practice of law means "furnish[ing] to another advice or service under circumstances which imply the possession and use of legal knowledge and skill."  123 Vt. at 182, 185 A.2d at 459.  Elaborating, we said:

> The practice of law includes all advice to clients, and all actions taken for them in matters connected with the law. . . .  Practice of law includes the giving of legal advice and counsel, the preparation of legal instruments and contracts of which legal rights are secured. . . .  Where the rendering of services for another involves the use of legal knowledge or skill on his [or her] behalf—where legal advice is required and is availed of or rendered in connection with such services—these services necessarily constitute or include the practice of law.

Id.

¶ 12.    Although the above caselaw articulates an expansive definition of the practice of law, as the Attorney General has argued in this case, "This decades-old definition does not reflect the reality of practice in Vermont and does not provide sufficient guidance to prosecutors, practitioners, and the public."  Notwithstanding the above broad definitions of the unauthorized practice, this Court has allowed nonlawyers to appear in court in certain specified circumstances, as have some administrative agencies.  In its prosecutorial role, the Attorney General has likewise taken a narrower view of the unauthorized practice.  These legal developments have tempered the breadth of the unauthorized practice prohibition, and reflect a recognition that the unauthorized practice prohibition should be applied consistent with its underlying purposes of public protection.

¶ 13.    Most notably, this Court has held that under certain circumstances a nonlawyer may appear in court on behalf of an unincorporated organization where the requirement of

6

counsel would preclude the organization's appearance. <u>Vt. Agency of Nat. Res. v. Upper Valley Reg'l Landfill Corp.</u>, 159 Vt. 454, 621 A.2d 225 (1992). In <u>Upper Valley Regional Landfill</u>, an unincorporated citizen environmental group was granted intervenor status in an action involving the closure of a landfill, but the environmental division ruled that the group must appear through counsel. On interlocutory appeal of that order, we reversed. We explained that "[t]he primary purpose of the 'lawyer-representation' rule is the protection of the public, not the creation of any private advantage for attorneys." 159 Vt. at 455-56, 621 A.2d at 227. We explained that courts generally refuse to permit nonattorneys to represent organizations "because they do not have the ethical responsibilities of attorneys and are not subject to the disciplinary control of the courts." <u>Id</u>. Nonlawyers often draft inarticulate pleadings and promote needlessly multiplicative proceedings, thereby burdening the parties and the court. <u>Id</u>. Nevertheless, we recognized that some courts have made narrow exceptions to the lawyer-representation rule where appearance by a lay representative would not unduly impede the court in the administration of justice. <u>Id</u>. We concluded that the lawyer-representation rule "should not be rigidly enforced in cases where those interests are not threatened and enforcement would preclude appearance by the organization." <u>Id</u>. at 458, 621 A.2d at 228. We accordingly held that courts may permit an organization to appear through a nonattorney representative where:

> (1) the organization cannot afford to hire counsel, nor can it secure counsel on a pro bono basis, (2) the proposed lay representative is authorized to represent the organization, (3) the proposed lay representative demonstrates adequate legal knowledge and skills to represent the organization without unduly burdening the opposing party or the court, and (4) the representative shares a common interest with the organization.

<u>Id</u>.

¶ 14. Similarly, this Court has applied a standard articulated by the Legislature in allowing nonattorneys to represent a corporation in court under certain circumstances. See, e.g. <u>Bandler v. Cohen Rosenthal & Kramer, LLP</u>, 2015 VT 115, ¶¶ 7, 14, __ Vt. __, 131 A.3d 733

7

(applying standard in 11A V.S.A. § 3.02(1)); 11A V.S.A. § 3.02 (authorizing corporation to appear through nonattorney representative if proposed representative is "authorized to represent the corporation, . . . demonstrates adequate legal knowledge and skills to represent the organization without unduly burdening the opposing party or the court[,] . . . [and] shares a common interest with the corporation").

¶ 15.    And, applying another standard articulated by the Legislature, this Court has recognized that nonattorney employees of the Office of Child Support may sign complaints and motions and participate in child support hearings before a magistrate.   McSweeney v. McSweeney, 159 Vt. 629, 630, 618 A.2d 1332, 1333-34 (1992) (applying 4 V.S.A. § 464); 4 V.S.A. § 464 (providing that duly qualified nonattorney employees of Office of Child Support may sign complaints and motions and may participate in child support hearings before magistrate, and such participation shall not be considered unauthorized practice of law).

¶ 16.    Nonlawyers are also permitted to represent certain parties in some state administrative proceedings.  See, e.g., Public Service Board Rules § 2.201(B), Code of Vt. Rules 30 000 001 (providing partner may represent partnership and corporation or association may be represented by officer or designated employee unless board finds substantial possibility that participation of nonlawyer representative will unnecessarily prolong proceeding or will result in inadequate exposition of factual or legal matters); Act 250 Rule 14(C), Code of Vt. Rules 12 004 060 (providing that "[a] party to a case before the District Commission may appear in person, or may be represented by an attorney or other representative" of party's choice).

¶ 17.    And finally, as noted above, in its prosecutorial capacity, the Attorney General has represented that it does not consider providing "legal advice internally within a company, department or other entity" by an individual not admitted to practice law in Vermont to constitute unauthorized practice.

¶ 18.    Collectively, these developments suggest that the general scope of the prohibition against the unauthorized practice of law may not be solely a function of the tasks an individual performs but also reflects a balancing of the risks and benefits to the public of allowing or disallowing such activities.  See, e.g., In re Op. No. 26 of the Comm. on the Unauthorized Practice of Law, 654 A.2d 1344, 1345-46 (N.J. 1995) ("The question of what constitutes the unauthorized practice of law involves more than an academic analysis of the function of lawyers, more than a determination of what they are uniquely qualified to do.  It also involves a determination of whether non-lawyers should be allowed, in the public interest, to engage in activities that may constitute the practice of law.").

## II.  "Jailhouse" Lawyering

¶ 19.    In addition to the above general considerations, we are guided in this case by two factors particular to the inmate context.  First, "jailhouse lawyers" who give legal assistance to fellow inmates but are not themselves licensed or formally law trained, are a well-established fixture in the justice system.  Second, incarcerated inmates face particular challenges in accessing legal advice, and those challenges raise serious public policy, and in some circumstances, constitutional concerns.

¶ 20.    On the first point, throughout the country, individuals in prison with some legal knowledge have, for years, frequently helped less sophisticated inmates with legal matters, usually without facing prosecution for the unauthorized practice of law.  See J. B. Nobel, Ensuring Meaningful Jailhouse Legal Assistance: The Need for a Jailhouse Lawyer-Inmate Privilege, 18 Cardozo L. Rev. 1569, 1570 (1997) (noting that jailhouse lawyers "exist in most penal institutions in this country").  The activities of "jailhouse lawyers" are well documented in literature and the popular press.  See, e.g., J. Gonnerman, Home Free: How a New York State prisoner became a jailhouse lawyer, and changed the system, The New Yorker, June 20, 2016, at 40 (describing inmate who successfully represented numerous fellow inmates); A. Liptak, A

Mediocre Criminal, but an Unmatched Jailhouse Lawyer, N.Y. Times, February 9, 2010, at A12; C. Gallagher, America's Most Famous Jailhouse Lawyer—Michael Ray—wins verdict!, Chuck Gallagher Blog (August 17, 2010, 10:51 AM) https://chuckgallagher.wordpress.com/2010/08/17/american-most-famous-jailhouse-lawyer-micheal-ray-wins-verdict/; J. Thomas, Prisoner Litigation: The Paradox of the Jailhouse Lawyer (1988). In fact, many important prisoners' rights cases were initially filed by prisoners who were not represented by lawyers. See J. Feierman, "The Power of the Pen": Jailhouse Lawyers, Literacy, and Civic Engagement, 41 Harv. C.R.-C.L. L. Rev. 369, 371-72 (2006) (noting that cases defining scope of right to protection from abuse by other prisoners, right to be free from excessive force by correctional officers, and right to adequate medical care were initiated by unrepresented prisoners). The Columbia Human Rights Law Review recognizes this reality, and publishes a manual for jailhouse lawyers. See Colum. Hum. Rts. L. Rev., A Jailhouse Lawyer's Manual (10th ed. 2014).

¶ 21. Vermont is no exception. The policies of Vermont's Department of Corrections recognize the role of "jailhouse lawyers" by including an exception to the limitation on correspondence among inmates that allows an inmate to communicate with another "regarding legal matters, as long as the Superintendent or designee knows that the second inmate customarily offers legal advice to other inmates." DOL Policy 409.05 ¶ 7(b)(iii) available at http://www.doc.state.vt.us/about/policies/pdu-general/rpd/correctional-services-301-550/401-500-programs-security-and-supervision/409-05-inmate-mail-publications-and-audio-video-regulations [https://perma.cc/2U99-YJ2D]. Vermont's courts have not actively sought to discourage inmates from helping one another with legal issues. In fact, in this appeal, Morales provided us with a transcript of a hearing in which the trial court urged a defendant to seek the help of other inmates who have successfully filed motions on their own behalf while awaiting a decision from the Defender General as to whether counsel will be appointed.

10

¶ 22.    In this context, although there may be some limits on the ways in which an inmate can give legal help to another, we are wary of adopting a definition of unauthorized practice of law that would subject individuals to a finding of criminal contempt for engaging in conduct that has been tolerated and arguably even supported by the State.  See Benning v. State, 161 Vt. 472, 483, 641 A.2d 757, 764 (1994) ("A criminal statute must 'define a criminal offense with sufficient certainty so as to inform a person of ordinary intelligence of conduct which is proscribed, and such that arbitrary and discriminatory enforcement is not encouraged' " (quoting State v. Cantrell, 151 Vt. 130, 133, 558 A.2d 639, 641 (1989))).

¶ 23.    The second factor particular to the context of this case is that incarcerated inmates are especially disadvantaged in trying to get legal information and advice.  The United States Supreme Court has recognized that "[j]ails and penitentiaries include among their inmates a high percentage of persons who are totally or functionally illiterate, whose educational attainments are slight, and whose intelligence is limited."  Johnson v. Avery, 393 U.S. 483, 487 (1969).  A significant number of inmates do not have the wherewithal to determine their rights and advocate for themselves due to limited education and literacy, and in some cases language barriers.  These constraints give rise to considerable policy concerns, and perhaps constitutional ones.

¶ 24.    In Johnson, the U.S. Supreme Court recognized that barring nonlawyer inmates from helping their peers with legal matters may raise constitutional issues in some cases.  In that case, the U.S. Supreme Court invalidated a Tennessee prison regulation that prohibited inmates from assisting other inmates in the preparation of "Writs or other legal matters."  Id. at 484.  The Court held inmates had a fundamental right of access to the courts "for the purpose of presenting their complaints," and that this right could not "be denied or obstructed."  Id. at 485.  The Court noted that it was common practice for trial courts to appoint counsel in post-conviction relief cases only after an inmate has filed a pro se petition "with such help as he [or she] can obtain within the prison walls or the prison system."  Id. at 488.  Accordingly, the Court struck down

11

the Tennessee regulation because it limited inmates' ability to file habeas corpus petitions. Id. at 490. Unless some "reasonable alternative to assist inmates in the preparation of petitions for post-conviction relief" was provided by the state, the regulation could not stand. Id. The Court explained that the State may impose "reasonable restrictions and constraints" upon jailhouse lawyers by, for example, placing "limitations on the time and location of such activities," Id. at 490, but it cannot outright ban a jailhouse lawyer from providing services to inmates unless it provides a "reasonable alternative to assist inmates in the preparation of petitions for post-conviction relief." Id.

¶ 25. Although the Supreme Court's constitutional ruling does not directly apply in this case because the inmates Morales assisted were represented by lawyers in connection with the matters in which Morales gave them advice, the policy considerations that animated the Court's analysis have broader application. Incarcerated prisoners are not only disproportionately undereducated; their access to a range of legal resources and information is severely limited, and their need may be great. As Justice William Douglas recognized, in addition to a host of issues relating to the underlying conviction and parole, an incarcerated offender may have civil matters such as divorce and custody issues, or social security, workers' compensation, or veterans' claims. Johnson, 393 U.S. at 492-93 (Douglas, J., dissenting). In addition, "litigation is one of the few means by which prisoners can bring public attention to serious health and safety risks, including inadequate health care, widespread violence, sexual assault, and unsafe environmental conditions." Feierman, supra, 41 Harv. C.R.-C.L. L. Rev. at 370. In contrast to a layperson who is not incarcerated, many inmates cannot seek a second opinion from another lawyer, research a legal question online, or visit a law library. As Justice Douglas acknowledged:

> Where government fails to provide the prison with the legal
> counsel it demands, the prison generates its own. In a community
> where illiteracy and mental deficiency is notoriously high, it is not
> enough to ask the prisoner to be his [or her] own lawyer. Without
> the assistance of fellow prisoners, some meritorious claims would

> never see the light of a courtroom. In cases where that assistance succeeds, it speaks for itself. And even in cases where it fails, it may provide a necessary medium of expression.

Johnson, 393 U.S. at 496-97. In short, from a public policy perspective, although "jailhouse lawyers" may pose a risk to the individuals they are trying to help, and to the court system, they may also perform a valuable service in promoting more meaningful access to justice than their fellow inmates would otherwise enjoy. In determining whether the prohibition against the unauthorized practice of law extends to the conduct of "jailhouse lawyers," this Court must take into account both sides of this balance.

### III. Conclusion

¶ 26. In light of the above considerations, we conclude that the specific conduct alleged by the State—that Morales gave legal advice to and drafted motions for fellow inmates—does not amount to the unauthorized practice of law and contempt against this Court.

¶ 27. We emphasize several caveats and limitations to our holding. First, our ruling is limited to the facts as alleged in the State's information and supporting affidavit. We do not decide whether an inmate who receives compensation for providing similar legal help is engaged in the unauthorized practice of law. Cf. Wardell v. Duncan, 470 F.3d 954, 959-63 (10th Cir. 2006) (upholding regulation allowing prison officials to confiscate mail, in part, because it prevents inmates from selling legal services, which court concluded would constitute unauthorized practice); Ladd v. Stewart 2015 WL 3935328 (March 18, 2015) (Toor, J.) (dismissing claim for payment for legal services provided by one inmate to another on ground that contract for payment for such services constituted unenforceable contract to engage in unauthorized practice of law). Similarly, we do not hold that an inmate may sign and file pleadings on behalf of another. In this case, the State has alleged that any pleadings or motions drafted by Morales were reviewed and signed by the inmates she was helping. Each inmate was ultimately accountable to the court for the contents of the filings. And we have not decided, and

need not decide in this case, whether an individual who is <u>not</u> incarcerated may be charged with the unauthorized practice of law for providing similar unpaid legal assistance. Our holding today applies only to legal services provided between inmates in a correctional facility.

¶ 28. Second, although we conclude that public policy does not support criminalizing the kind of legal assistance Morales allegedly gave other inmates, we emphasize the potential risks to prisoners of relying on unlicensed laypersons for legal advice, especially when the prisoners are otherwise entitled to state-funded counsel. Some inmates may be accomplished legal advisors and advocates, but some may be so limited in their knowledge, skills, and judgment as to leave someone who relies on their legal advice no better off, and perhaps worse off, than if the "jailhouse lawyer" had done nothing. Inmates who rely on their peers for legal advice should recognize this risk.

¶ 29. And finally, our conclusion that the State's allegations do not support a charge of unauthorized practice of law against Morales does not mean that a court is compelled to accept a pro se pleading or motion filed by an individual whom Morales has assisted when counsel of record has already entered an appearance. We have held that "[a] criminal defendant does not have an absolute right to both self-representation <u>and</u> the assistance of counsel." <u>State v. Sims</u>, 158 Vt. 173, 185, 608 A.2d 1149, 156 (1991) (citation omitted). "Whether to allow hybrid representation remains within the sound discretion of the trial judge." <u>Id</u>. (citation omitted); see also <u>State v. Crannell</u>, 170 Vt. 387, 407, 750 A.2d 1002, 1018 (2000) (affirming trial court's discretionary decision to refuse to consider motion filed by defendant pro se where defendant was represented by counsel, noting the court's discretion in managing hybrid representation), <u>overruled on other grounds by</u> <u>State v. Brillon</u>, 2008 VT 35, ¶¶ 41-42, 183 Vt. 475, 955 A.2d 1108. An orderly presentation of a litigant's case is important and the trial court may impose controls on the filing of pro se motions by represented litigants to accomplish that end. Nothing in our analysis in this case limits the trial court's discretion on this matter.

¶ 30.    For the above reasons, on these facts alleged by the State, we conclude that there is no probable cause to believe Morales engaged in the unauthorized practice of law.

The State's information is dismissed without prejudice.

FOR THE COURT:

_____
Associate Justice